NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AL-JAMAR DICKERSON, | : | Civil Action No. 19-18941 (JMV) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

**John Michael Vazquez, U.S.D.J.**

Petitioner Al-Jamar Dickerson seeks relief pursuant to 28 U.S.C. § 2255.  D.E. 3-1. Petitioner raised numerous claims, including ineffective assistance of counsel.  Respondent (the "Government") filed opposition.  D.E. 6. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Petitioner's motion is denied and no certificate of appealability shall issue.

---

[1] Petitioner's brief in support of his motion will be referred to as "Br." (D.E. 3-1); and Respondent's opposition will be referred to as "Opp." (D.E. 6).  Petitioner filed his initial motion, D.E. 1, but he failed to use the proper form and failed to sign the petition.  As a result, the Court administratively terminated the matter and ordered the Clerk's Office to provide Petitioner with the appropriate form.  D.E. 2.  Thus, the initial submission, D.E. 1, does not have legal effect. However, because Petitioner is proceeding *pro se*, to the extent Petitioner made legal arguments in D.E. 1 that coincide with the proper motion, D.E. 3-1, the Court will consider those arguments herein.

I.   **Background**

   A.  **Criminal Case – Crim. No. 19-210**

On July 24, 2018, members of the Newark Police Department were surveilling an area, known to be an open-air drug market, to gather information about a shooting the day before. PSR ¶ 10. The officers saw Petitioner make several hand-to-hand transactions in which he received cash in exchange for small items that he retrieved from a black plastic bag. *Id.* at ¶¶ 11-12. Petitioner then entered a red Lincoln LS while holding the black plastic bag, and began traveling south; the officers then stopped the vehicle. *Id.* at ¶¶ 13-14. After stopping the Lincoln, the officers saw Petitioner reaching around the inside of the car. *Id.* at ¶ 14. The police removed Petitioner from the car and found $968 on him but the officers could not find the plastic bag in the car. *Id.* After an interior search of the Lincoln failed to turn up evidence, the Essex County Sherriff's Office K9 Unit responded, and the drug dog made a positive indication. *Id.* at ¶ 14. The Lincoln was towed to a secure garage, and a search warrant was obtained. *Id.* at ¶¶ 14-15. While searching the vehicle, officers discovered a hidden electronic compartment, or "trap," and found 3,103 decks of heroin along with a 9mm handgun. *Id.* at ¶ 15. The handgun had an extended magazine loaded with four rounds. *Id.*

In a plea agreement dated November 2, 2018, Petitioner agreed to plead guilty to three counts: (1) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); (2) distribution of, and possession with intent to distribute, heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) use of, and carrying, a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). D.E. 15 at 1. On Count One, Petitioner faced a statutory maximum of 10 years' imprisonment, and on Count Two, he faced a statutory maximum of 20 years' imprisonment. Count Three carried a statutory mandatory minimum of 5 years'

imprisonment and a maximum of life. Critically, pursuant to statute, any sentence on Count Three had to be run consecutively to any sentence imposed on Counts One and Two.

Petitioner, however, entered into a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). *Id.* at 2. That provision permits the parties to agree to a specific sentence which binds the court if the court accepts the plea. F.R.Cr.P. 11(c)(1)(C). The parties agreed to a sentence of 10 years' imprisonment followed by a term of supervised release of at least 3 years. D.E. 15 at 1. In addition, if the Court sentenced in accordance with the agreed upon sentence, Petitioner waived his right to file an appeal, a collateral attack, or any other writ or motion (including pursuant to 28 U.S.C. § 2255) challenging his sentence. *Id.* at 10. Petitioner also agreed to forfeit the firearm, the ammunition, the extended magazine, cash, and the Lincoln. *Id.* at 4.

Because it was a Rule 11(c)(1)(C) plea, the Court ordered (with the parties' consent) a Presentence Report ("PSR") before the plea and sentencing on March 26, 2019. Docket. No. 19-cv-18941, D.E. 6-2 ("Tr."). At the proceeding, Petitioner was placed under oath. *Id.* at 4:10. Petitioner indicated that he had never been treated for an addiction to drugs or alcohol and had never had any mental health treatment. *Id.* at 5: 21-6: 3.

Petitioner also stated that he had a chance to review the charges against him and discuss them with his attorney. *Id.* at 6:12-22. Petitioner continued that he had had an opportunity to discuss the case with his counsel, including the potential evidence and any potential defenses. *Id.* at 6:23-7:6. The Court then reviewed Petitioner's right to indictment, right to a trial by jury, and potential immigration ramifications if he was not a citizen. *Id.* at 7-13. As to the plea agreement, the prosecutor summarized the key terms, which Defendant agreed with. *Id.* at 13:14-14:20. Petitioner further stated that he had had an opportunity to review the agreement and discuss it with his attorney before signing. *Id.* at 14:21-15:4. The Court then reviewed with Petitioner that it was

3

a Rule 11(c)(1)(C) plea, which meant that the Court was bound to impose the agreed upon sentence once the plea was accepted. *Id.* at 15:5-16. Defendant also stated that no one attempted to force him to plead guilty. *Id.* at 15:16-21.

The Court then reviewed the potential statutory penalties that Petitioner faced. *Id.* at 16-17. The Court also noted the items that Petitioner had agreed to forfeit. *Id.* at 17:15-20. Even though it was a Rule 11(c)(1)(C) plea, the Court noted the steps that it would undertake at sentencing. *Id.* at 18-19. The Court then discussed with Petitioner his limited waiver of his appeal and post-conviction rights. *Id.* at 19-20:15-6. During his factual basis, Petitioner acknowledged that (1) he possessed, with intent to distribute, approximately 3,103 decks of heroin on July 24, 2018, (2) that he possessed a loaded firearm on the same day, (3) that he possessed the firearm in furtherance of his intent to distribute the heroin that he had, and (4) that he had a 2015 felony drug conviction. *Id.* at 21-22:6-12. The Court found that Petitioner was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that there was an adequate factual basis to accept the plea. *Id.* at 23:9-18.

The matter proceeded directly to sentencing. Petitioner had reviewed the final PSR with his counsel, and his counsel had no objections to the PSR. *Id.* at 24:12-22. The Court adopted the final PSR and relied upon it during the sentencing. *Id.* at 24-25:23-1. The Court then conducted a United States Sentencing Guidelines calculation to which the parties had no objection. *Id.* at 25-26. Without the career offender calculation, Petitioner faced 151 to 188 months which, when coupled with the minimum consecutive sentence on Count 3, resulted in a range of 211 to 248 months. *Id.* When Petitioner's career offender status was factored in, his Guideline range was 262 to 327 months. *Id.*

The Court expressed reservations about the stipulated sentence. Specifically, the Court raised concerns over Petitioner's extensive criminal history; Petitioner's failure to take any steps toward leading a law-abiding life; his recalcitrance with the U.S. Probation Office during the PSR process; and Petitioner's lack of remorse over his actions. *Id.* at 35-37. Nevertheless, the Court imposed a sentence consistent with the plea agreement, sentencing Petitioner to a total of 120 months: 60 months on each of Counts 1 and 2 to run concurrently followed by a consecutive sentence of 60 months on Count 3. *Id.* at 38.

### B. Section 2255 Motion

Petitioner raised the following claims in his current petition: (1) he is absent minded due to a prior gun-shot wound to the head; (2) there was no evidence of the hand-to-hand buys, Petitioner acted "uncontiously" (which the Court construes as "unconsciously"), and improper calculation of sentence; (3) there was no proof of brandishing a firearm, no voice analysis, and no witnesses; (4) there were no statements as to an actual shooting; (4) ineffective assistance of counsel for failing to appeal Petitioner's erroneous sentence. Br. In Petitioner's initial submission, as discussed in note 1, he also argued ineffective assistance of counsel for failing to object to the lack of federal authority to prosecute the charged crimes, for failing to object to the Court's lack of personal jurisdiction, and again as to Court's lack of subject-matter jurisdiction but on standing grounds. D.E. 1. While not raised as separate grounds for relief, Petitioner also mentions a warrantless search, an illegal search, entrapment, and a coerced plea. *Id.*

### II.     Standard

Section 2255 provides in relevant part as follows:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction

> to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
> . . .
> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
> > (1) the date on which the judgment of conviction becomes final;
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. Section 2255 relief is only available when the error, among other things, was a "'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

### III. Analysis

#### A. Irrelevant Claims

At the outset, the Court notes that Petitioner makes several arguments which have no bearing on his case. Plaintiff argues that there was no evidence of brandishing a firearm and no statements as to an actual shooting. Petitioner was not charged with either brandishing or firing a weapon, so these assertions are irrelevant. Plaintiff adds that there was no voice analysis, but the Government never claimed that it had such evidence on which an analysis could be performed. As to Petitioner's claim concerning personal jurisdiction, he argues and cites to cases concerning specific personal jurisdiction in civil matters. This is a criminal case, and his arguments are

6

misplaced. Similarly, Plaintiff's assertions as to standing address a plaintiff's standing in a civil case. Petitioner was a defendant in a criminal case; his standing arguments are inapposite.

### B. Substantive Claims

Petitioner makes numerous assertions as to his head injury, his coerced plea, the improper calculation of his sentence, an illegal search, entrapment, and the lack of witnesses to his crimes. The Government's initial response is that Petitioner has waived these claims in light of the limited waiver in his plea agreement. Opp. at 4. The Government explains that the waiver is enforceable because it was entered into knowingly and voluntarily and does not result in a miscarriage of justice. *Id.* (citing *United States v. Marby*, 536 F.3d 231, 237 (3d Cir. 2008)). The Court agrees, but even if the Court considered the merits of Petitioner's arguments, they would nevertheless fail.

As to the calculation of his sentence, Petitioner provides no analysis. Petitioner, pursuant to his Rule 11(c)(1)(C) plea, was sentenced to a tremendously lower sentence than if he had received a Guidelines' sentence; this argument has no merit. Similarly, Petitioner argues that there were no witnesses to his offenses. Of course, this ignores the uncontroverted evidence of the officers who directly witnessed his crimes. This claim has no merit. Likewise, Plaintiff fails to present any evidence of entrapment. Given the Petitioner's extensive criminal history, and the facts of this case (the police officers were investigating a shooting and happened to see Petitioner selling heroin), the Court cannot envision a scenario in which an entrapment defense would have any merit. Finally, as to his head injury (which Petitioner refused to disclose to Probation), the Court was well aware of the past shooting, noting that it was miraculous that Petitioner had not sustained any long-term medical issues as a result. Tr. at 34-35. Petitioner has presented no medical evidence to support his claim of lingering absent mindedness. And Petitioner's coherent,

7

logical responses at his plea and sentencing, along with the Court's findings, undercut any claim in this regard.

As to Petitioner's claims that his plea was coerced, he fails to meet his burden. Indeed, besides stating in a conclusory fashion that he was coerced, he provides no evidence in support. To prevail, Petitioner would need to prove that his plea was not voluntary. *United States v. Stewart*, 977 F.2d 81, 84 (1992). In addition, in light of his sworn testimony during his plea hearing, Petitioner must "demonstrate compelling reasons for questioning their truth." *United States v. Dickler*, 64 F.3d 818, 823 n. 7 (3d Cir 1995) (quoting *United States v. Whitley*, 759 F.2d 327 (4th Cir.), *cert. denied*, 474 U.S. 873 (1985)). Here, Petitioner entered into a written plea agreement which required the Court to given him a much lower sentence than called for under the Guidelines if the Court accepted the plea. During the plea hearing, Petitioner unequivocally stated that he understood the charges against him, that he understood the terms of the plea agreement, that he had never been treated for mental illness or drug/alcohol addiction, that no promises were made to him outside of the agreement, that no one attempted to force him to enter the plea, that his counsel had answered all of his questions, and that he was pleading guilty of his own free will. The Court, as a result, found that Petitioner had entered a knowing, intelligent, and voluntary plea of guilty. Petitioner has provided no evidence, much less compelling evidence, to refute this finding.

As to Petitioner's illegal search claim, his argument fails for three reasons. First, he forfeited his right to challenge the search by pleading guilty. *United States v. Porter*, 933 F.3d 226 (3d Cir. 2019) (observing that a valid guilty plea results in a defendant not being able to challenge the admissibility of evidence obtained in violation of the Fourth Amendment (citing *Class v. United States*, - U.S. -, 138 S. Ct. 798, 804 (2018)). Second, following a valid stop (based

on the officers' actual observations of apparent drug activity), the automobile exception to the warrant requirement was applicable. *Arizona v. Gant*, 556 U.S. 332, 339-40 (2009). Finally, and critically, the relevant evidence – the heroin and the firearm – were located as a result of a search warrant (not a warrantless search), and Petitioner has presented no evidence that calls the validity of the warrant into question.[2]

### C. Ineffective Assistance Claims

Claims of ineffective assistance of counsel are governed by the standard set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner bears the burden of demonstrating, first, "that counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). The "proper standard . . . is that of 'reasonably effective assistance'" in determining whether counsel's performance was deficient under *Strickland*. *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" based on the particular facts of a petitioner's case, viewed as of the time of the counsel's challenged conduct. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

---

[2] The Government analyzes Petitioner's search claims under the ineffective assistance rubric. Opp. at 9-10. However, the Court did not see such an argument. In any event, if Petitioner had raised such an argument, it would be without merit. Because the drugs and gun were found pursuant to a valid warrant, Petitioner has not demonstrated that his attorney acted in an unreasonable manner in failing to file a suppression motion nor has Petitioner shown the requisite prejudice.

9

A petitioner must also show prejudice. Pursuant to *Strickland*, a habeas petitioner must also demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "depriv[ed] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.

To be clear, the Sixth Amendment right to effective assistance of counsel extends beyond trial to other facets of criminal proceedings, such as sentencing. *United States v. Sepling*, 944 F.3d 138, 144 (3d Cir. 2019) (citing *Glover v. United States,* 531 U.S. 198 (2001)). The right to effective assistance of counsel also extends to an attorney's advice as to entering a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also Missouri v. Frye*, 566 U.S. 134, 140 (2012); *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015). Ineffective assistance of counsel may further apply if a defense attorney fails to make a timely motion. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 379-83 (1986) (finding that an attorney's failure to file a timely motion to suppress could be a basis for an ineffective-assistance claim).

A court reviewing a habeas petitioner's claim of ineffective assistance of counsel need not determine whether counsel's performance fell below an objective standard of reasonableness before addressing whether the defendant was prejudiced by counsel's errors. *Strickland,* 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

The Court concludes that Petitioner has not shown prejudice under *Strickland*; Petitioner has not demonstrated a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Petitioner makes the following arguments as to ineffective assistance: failure to appeal, failure to object to the Court's subject-matter jurisdiction over the offenses to which Petitioner pled, failure to object to personal jurisdiction, and failure to object to standing. Petitioner's claims as to personal jurisdiction and standing fail for the same reasons addressed above.

As to failure to appeal, Petitioner was subject to a limited waiver of his appeal rights. As a result, his argument fails for two reasons. First, he has not demonstrated that his limited waiver was not valid. *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001) (ruling that a criminal defendant's waiver of appeal is valid if it is entered into voluntarily and knowingly and would not work a miscarriage of justice). Second, Petitioner has not demonstrated that the outcome of his case would have been different had his counsel filed an appeal.

Petitioner's attacks on the constitutionality of his offenses fare no better. Petitioner essentially argues that the United States Constitution prohibits federal criminal laws as to illicit drugs and firearms. The relevant statutes have been held to be a proper exercise of Congressional authority under the Commerce Clause. *See* U.S. Const. art. 1, § 8, cl. 3 ("The Congress shall have the Power . . . To regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes[.]"). As noted, Petitioner pled guilty to (1) a violation of 18 U.S.C. § 922(g)(1), *see United States v. Singletary*, 268 F.3d 196, 204-05 (3d Cir. 2001) (reiterating that 18 U.S.C. § 922(g)(1) was within the authority of the Commerce Clause); (2) a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), *see United States v. Cidone*, 452 F. App'x 190 (3d Cir. 2011) ("We have

11

no difficulty holding that federal laws regulating food and drugs under Title 21 of the U.S. Code, including 21 U.S.C. § 841, under which Cidone was convicted, are constitutional" under the Commerce Clause); and (3) a violation of 18 U.S.C. § 924(c)(1)(A)(i), *see United States v. Walker*, 142 F.3d 103, 111 (2d Cir. 1998) ("[W]e find that § 924(c)(1) regulates an economic activity that substantially affects interstate commerce and, as such, is a valid exercise of Congressional power under the Commerce Clause."), *cert. denied*, 525 U.S. 896 (1998).  Petitioner has pointed to no precedent supporting his argument, and the case law demonstrates that Petitioner's argument has been expressly rejected.  As a result, the Court finds that it was not unreasonable for his attorney to fail to challenge subject-matter jurisdiction nor was Petitioner prejudiced by his counsel's failure to do so.

An evidentiary hearing is not necessary because the record shows conclusively that Petitioner is not entitled to relief.  28 U.S.C. § 2255(b).  In addition, no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

### IV.    Conclusion

For the foregoing reasons, Petitioner's motion for relief under 28 U.S.C. § 2255 is denied and a certificate of appealability shall not issue.  An appropriate Order accompanies this Opinion.

Date:  December 11, 2020

　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　HON. JOHN M. VAZQUEZ,
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge